No. 873 October 8, 2025 85

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICARDO BRISENO SANCHEZ,
*Defendant-Appellant.*

Marion County Circuit Court
22CR25511; A181984

J. Channing Bennett, Judge.

Submitted July 9, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emma McDermott, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, and refusing to take a breath test, ORS 813.095. Defendant moved to suppress a warrantless blood draw that officers obtained from defendant after he refused a breath test. The trial court concluded that exigent circumstances justified the warrantless blood draw and denied the motion to suppress. Defendant appeals. We conclude that the trial court correctly concluded that exigent circumstances justified the warrantless blood draw and affirm.

We review the denial of a motion to suppress for errors of law, accepting the trial court's express and implied factual findings if sufficient evidence in the record supports them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). The relevant facts are not in dispute on appeal.[1] At 6:16 p.m., Keizer Police Officer Kowash responded to a report of a car crash at a commercial parking lot. Kowash did not find defendant at the commercial parking lot but was able to track defendant to an apartment complex. Upon arrival at the complex, Kowash saw the defendant in the driver's seat of the car involved in the crash. When Kowash activated his overhead lights, defendant drove forward and struck a pole, damaging his car.

Kowash approached defendant and observed that defendant had bloodshot, watery eyes, and responded slowly to commands. Kowash also noted an "overwhelming odor of an alcoholic beverage" emanating from the car. Kowash told defendant why he was stopping him and advised defendant of his *Miranda* rights multiple times. Defendant indicated that he did not understand his rights. Under the circumstances, Kowash did not attempt to conduct any field sobriety tests on defendant. Kowash arrested defendant and took him to the Keizer police station.

At the station, just after 7:00 p.m., Kowash asked defendant to provide a breath sample, and defendant refused. Kowash decided to get a blood draw. Another officer

---

[1] We draw the facts from the testimony and evidence at the hearing on defendant's motion to suppress.

took defendant to a hospital where medical personnel drew his blood at 8:18 p.m. Defendant's blood alcohol concentration (BAC) was .30 percent.

As noted, defendant moved to suppress the results of his blood draw, arguing that the officers were required to first obtain a warrant and that their failure to do so violated his rights under the Fourth Amendment to the United States Constitution. At the hearing on the motion to suppress, Kowash testified that he opted for a warrantless blood draw because it would have taken too long to get a warrant first:

> "[S]o there [were] a couple things. Just my observations of him driving, as well as [the] urgency of knowing that—due to my training experience, the blood alcohol dissipates from the body at a rate of .015 percent an hour. And I believe at that time we were losing evidence if we work to try to apply for a warrant, as well as staffing issues, since there's only three people on duty. And I know from my experience working night shift patrol, that is the busiest time of the day is right when you start, for a couple of hours at least."

Kowash estimated that it takes him about two hours to complete a warrant application, which includes the time spent writing the application, contacting the district attorney's office for review of the application, and after that review, contacting a judge to review and sign the warrant. While Kowash was familiar with submitting warrants electronically, he estimated that doing so would have taken him a bit longer than a traditional warrant because he did not have as much experience with "e-warrants."

Kowash also explained that the Keizer Police Department is small. It has four officers on day shift and three officers on night shift. A shift change happens at 7:00 p.m., and the period between 7:00 p.m. to 11:00 p.m. is a busy time for the officers. Kowash noted that one officer was with defendant at the hospital as Kowash was going off duty. If one of the remaining two night shift officers on duty began to write the warrant application and follow that process through, the department would have had only one officer available to handle all other police work at that time.

The trial court denied defendant's motion to suppress. It noted the limitations posed by the Keizer Police

Department having only seven officers and no "warrant department," and that tying up two officers with defendant's case—leaving only one officer to deal with all other police business in Keizer—would have been problematic. The court also noted the exigency created by alcohol dissipating from defendant's bloodstream and credited Kowash's testimony that it would have taken several hours to obtain a warrant. It considered that, even though alcohol dissipates at a known rate, a blood sample drawn closer in time to when defendant was stopped would be the best available evidence of his BAC when he was driving; a three-hour delay for a warrant to authorize a blood draw could have affected the outcome of the case if defendant's BAC had been close to .08 percent at the time of the delayed draw. The trial court thus concluded that the warrantless blood draw was justified by exigent circumstances.

On appeal, defendant challenges that ruling.[2] Axiomatically, a police-authorized blood draw is both a search of a person and a seizure of that person's blood under the Fourth Amendment,[3] *State v. Portulano*, 320 Or App 335, 350, 514 P3d 93 (2022), and therefore "'implicates con- stitutional guarantees against unreasonable searches and seizures'" under the Fourth Amendment, *id.* at 345 (quot- ing *State v. Milligan*, 304 Or 659, 664, 748 P2d 130 (1988)). A warrantless blood draw is unconstitutional unless it is justified by an exception to the warrant requirement, such as exigent circumstances. *Missouri v. McNeely*, 569 US 141, 148, 133 S Ct 1552, 185 L Ed 2d 696 (2013). The United States Supreme Court has held that "the natural dissipa- tion of alcohol in the bloodstream" alone does not establish

_____

[2] During defendant's cross-examination of Kowash, the trial court took judi- cial notice of the warrant process in Marion County from its perspective and spe- cifically how the Keizer Police Department procedures differed from other law enforcement entities like the Salem Police Department. On appeal, defendant argues that the trial court's *sua sponte* judicial notice of the Marion County war- rant process is not "part of the evidentiary record" and that we should not consider it. We express no opinion on whether it is the type of information that may be judi- cially noticed, as defendant made no objection at the time. Had defendant objected, the state might have been able to call a witness who was familiar with those court processes and could have provided the same information. We do note, however, that Kowash had described much of the warrant process in his testimony.

[3] Defendant here expressly raises only a federal constitutional claim, so we focus our analysis accordingly.

a *per se* exigency justifying an exception to the Fourth Amendment's warrant requirement. *Id.* at 165. At the same time, the Court has also recognized the constitutional significance of the state's interest in BAC testing:

> "The importance of the needs served by BAC testing is hard to overstate. The bottom line is that BAC tests are needed for enforcing laws that save lives. The specifics, in short, are these: Highway safety is critical; it is served by laws that criminalize driving with a certain BAC level; and enforcing these legal BAC limits requires efficient testing to obtain BAC evidence, which naturally dissipates. So BAC tests are crucial links in a chain on which vital interests hang. And when a breath test is unavailable to advance those aims, a blood test becomes essential."

*Mitchell v. Wisconsin*, 588 US 840, 851, 139 S Ct 2525, 204 L Ed 2d 1040 (2019).

Thus, to determine whether the evidence justified the warrantless blood draw, we examine the totality of the circumstances, including "(1) the availability of a magistrate; (2) the need for police to attend to and investigate a car accident; (3) technology that enables police to secure warrants quickly; (4) the procedures for obtaining a warrant; and (5) other practical problems that prevent law enforcement from obtaining a warrant within a timeframe that still preserves the evidence." *Portulano*, 320 Or App at 351.

Beginning with the first, third, and fourth factors, Oregon has laws authorizing electronic and telephonic warrants, ORS 133.545(7), (8); *Portulano*, 320 Or App at 357, and Marion County courts had an established electronic warrant process at the time of defendant's arrest, making a judge available to review electronic warrants. Kowash knew how to use that process to send an electronic warrant application to a judge. This process reduces the time needed to secure a warrant but still includes many of the same steps as the "paper" warrant process. Kowash testified that, even with the electronic process, he still would have had to write up a full warrant application, send it to the district attorney's office for review, and then email it to the warrant judge on duty for approval. Although there were procedures and technology available to expedite the warrant process,

the procedures and technology would have only saved the time previously required to drive to the judge's location to be sworn and obtain the judge's signature. The trial court credited Kowash's testimony that it would have taken him at least two hours to prepare the application, and the court found that the entire process would have taken about three hours. That weighs in favor of exigency.

Concerning the second factor, the hit-and-run scene and the apartment complex parking lot where defendant was arrested were separate scenes, but there was no evidence that those scenes required immediate attention or investigation from officers by the time defendant was being transported to the hospital for the blood draw. However, with respect to the fifth factor, Kowash did identify an additional practical consideration that weighs in favor of exigency: that the Keizer Police Department is small and had only three officers on duty at the time of defendant's arrest. If one of the officers had been occupied with obtaining a warrant while another was busy transporting defendant to the hospital, only one officer would have been available to serve all of the remaining law-enforcement needs of the city for approximately three hours during a typically busy time of day. *See Portulano*, 320 Or App at 359 ("We are mindful of the challenges that remote warrants can place on" localities "with limited resources" and consider "the possibility that a record could establish that the resource constraints * * * prevented seeking" an electronic warrant.). This practical consideration specific to the Keizer Police Department weighs in favor of exigency.

Taking into account the totality of the circumstances, then, the trial court correctly concluded that the state met its burden of establishing that exigent circumstances justified forgoing the warrant process to preserve BAC evidence that was dissipating over time. The trial court found that the warrant process would have taken about three hours. Even assuming that an officer was available to start the warrant process while another officer transported defendant to the hospital, obtaining a warrant would have delayed defendant's blood draw by over two hours, resulting in a total delay of over four hours from the time that

defendant was driving, a potentially significant difference. Thus, the trial court correctly concluded that there were exigent circumstances that justified obtaining the warrantless blood draw.

Affirmed.